UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLIE TROMBLEY,

      Plaintiff,

v.                                  Case No. 22-cv-11977
                                       Honorable Victoria A. Roberts

R&L CARRIERS SHARED SERVICES,
LLC, et al.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

### I.    INTRODUCTION

On November 1, 2022, Charlie Trombley filed an amended complaint against Defendants R&L Carriers Shared Services, LLC and R&L Carriers, Inc. (collectively "R&L"). Trombley says R&L unlawfully terminated him by putting him on involuntary medical retirement following his heart failure diagnosis and a period of medical leave.

Trombley alleges: (1) retaliation in violation of the Family and Medical Leave Act; and (2) disability discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). R&L moved for judgment on the pleadings on Trombley's PWDCRA claim. It says Trombley cannot establish a prima facie case for disability discrimination.

1

Because Trombley's heart failure diagnosis disqualified him from employment, he was not otherwise qualified for the position and cannot establish a prima facie case for disability discrimination. The Court **GRANTS** the motion.

## II.   Background

Trombley operated commercial motor vehicles ("CMVs") for R&L as a city driver. On January 22, 2022, Trombley suffered a medical crisis and his doctor diagnosed him with heart failure. Trombley went out on medical leave. His doctor advised him that he could return to work as a city driver, provided he adhere to a temporary forty-pound lifting restriction.

Trombley feared he would not receive an accommodation consistent with his medical restriction, so he requested reassignment to an open dispatch position. Because heart failure can constitute a disability under state and federal law, Trombley believed he was entitled to reassignment. However, rather than automatically reassign Trombley, R&L interviewed him for the dispatch position, and did not select Trombley.

While still on medical leave, Trombley suffered another medical crisis. He again requested reassignment to one of the open positions in his terminal. Again, R&L did not automatically reassign him but told him that he

could apply for another position. R&L also advised Trombley that his heart failure diagnosis disqualified him from the city driver position.

Trombley requested a third-party medical examination to determine his ability to continue operating CMVs. R&L did not respond. Two weeks later, R&L told Trombley he exhausted his medical leave entitlement and placed him on medical retirement, ending his employment.

## III.   STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12. For purposes of a 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-582 (6th Cir. 2007) (citing *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

A motion for judgment on the pleadings is granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Id. (citing *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## IV.   LAW AND ANALYSIS

To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knows or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Zakaria v. MNP Corp.*, 263 F. Supp. 3d 654, 658 (E.D. Mich. 2017) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)).

R&L says Trombley cannot establish a prima facie case of disability discrimination because he is not otherwise qualified for the city driver job. It says the Department of Transportation ("DOT") regulations bar those with heart failure from operating CMVs. 49 C.F.R. §391.41(b)(4).

Trombley does not contest that he has heart failure but says: (1) a diagnosis of heart failure is not dispositive as to whether he could perform the essential functions of the job; (2) C.F.R. §391.41(b)(4) only kicks in after an employer requires the employee to seek an independent medical examination to determine if the employee is fit for duty; (3) R&L ignored the Michigan law permitting drivers excluded by C.F.R. §391.41 to drive within

the state with a waiver; and (4) R&L failed to engage in the interactive process. None of his arguments is convincing.

### A. Trombley's Heart Failure Diagnosis Disqualifies Him From Operating CMVs

Trombley's diagnosis of heart failure prevented him from performing an essential function of his job—driving a CMV. Under C.F.R. §391.41(b)(4) a person is not "physically qualified to drive a [CMV if he has a] current clinical diagnosis of...congestive cardiac failure." Under federal law Trombley's diagnosis means he is not qualified to perform an essential function of the position.

The regulation makes no exceptions when it comes to heart failure, and disqualification is automatic. *Id.* It is immaterial that Trombley or his physician believes he could continue driving commercial vehicles with accommodations.

This automatic disqualification is special to only a handful of infirmities. Conditions like high blood pressure or respiratory disfunction, for example, permit a driver to continue operating a CMV so long as it does not "interfere with [his] ability to control and drive the vehicle". C.F.R. §391.41(b)(5),(6). This language suggests that for some illnesses, an inquiry into whether an operator can continue driving CMVs with the condition is necessary. But this language is not in the subsection discussing heart failure, indicating that

heart failure is meant to be a disqualifying condition without exception or other considerations. *King v. Mrs. Grissoms Salads, Inc.*, 1999 WL 552512 (6th Cir.1999).

### B. A Medical Exam By A Listed Examiner Is Not A Prerequisite For C.F.R. § 391.41(b)(4), Especially Where The Condition Is Uncontested

The Court finds no support for Trombley's position that C.F.R. §391.41(b)(4) only kicks in after an employer requires an employee to seek a medical exam by an examiner listed on the National Registry of Certified Medical Examiners. To be sure, an exam by a listed examiner is required in several situations before an employer can discharge an employee, but not where an employee has an uncontested disqualifying condition.

For example, an employer cannot determine on its own that an employee has a disqualifying medical condition. *Michael v. City of Troy Police Dep't*, 808 F.3d 304 (6th Cir. 2015). Likewise, an employer is barred from accepting a private physician's diagnosis over the employee's objections. *See* 49 C.F.R. § 391.47. In these cases, and others in which there is a dispute about the condition, an employer must give the employee an opportunity to appeal and be evaluated by a listed examiner before termination. *Id*. But none of these situations is presented; and parties agree that Trombley suffered from heart failure.

6

Trombley does not attempt to argue that his diagnosis is inaccurate or stale. Thus, R&L properly relied on the diagnosis and merely followed DOT regulations in deeming him unqualified. Trombley's suggestion that R&L prematurely and on its own determined that he could not operate CMVs lacks merit.

Further, Trombley suggests that R&L had a duty to either verify the uncontested diagnosis or evaluate whether he could operate a CMV despite his heart failure diagnosis. Trombley is wrong. Since there was no question that Trombley had heart failure, R&L's duty was to follow DOT regulations and remove him. *See Bay v. Cassens Transport Co*., 212 F.3d 969, 974 (7th Cir.2000) (Under applicable DOT regulations, the defendant was not allowed to permit the plaintiff to operate a CMV without certification.)

### C. R&L Had No Duty To Seek A Waiver For Trombley Under MCL 480.13 §3(2)

Michigan law allows a driver who is disqualified under DOT regulations to drive within Michigan's boarders with a waiver from the State. MCL 480.13 §3(2). Trombley appears to assign some fault to R&L, arguing that it did not know the law or failed to take steps to evaluate whether he could have gotten a waiver. His argument lacks merit. It does not matter if R&L knew of or utilized MCL 480.13 §3(2) because it is not the employer's duty to seek a waiver under the statute. The waiver requires participation from both the

7

employee and employer. Trombley presents no evidence that he sought the waiver, or that R&L inhibited the waiver process in any way.

### D. R&L Had No Duty To Engage In The Interactive Process

Finally, Trombley argues that R&L failed to engage in the interactive process defined by the ADA and followed by the PWDCRA. *Steward v. New Chrysler,* 415 F. App'x 632, 643–44 (6th Cir.2011); *Parker v. Daimlerchrysler Corp.,* No. 245066, 2004 WL 1103968, at *3 (Mich.Ct.App. May 18, 2004) (using the same standards for the PWDCRA as the ADA). His arguments are unavailing. Since Trombley he was not otherwise qualified for the position, the ADA interactive process is not implicated. *Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435, 436–437 (6th Cir. 2001).

## V.   CONCLUSION

Trombley cannot establish a prima facie case of disability discrimination. The Court **GRANTS** R&L's motion.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  6/13/2023

8